UNDERWOOD v RECHSTEINER

OPINION OF THE COURT

1. JUDGMENT—ACCELERATED JUDGMENT—DISPOSITION OF CLAIM—IN-
    SURANCE—RESERVATION OF RIGHT—PARTICIPATION IN RECOVERY.
    An agreement by an insured plaintiff prior to commencement of a
    negligence action to hold as trustee all rights, claims and
    causes of action arising from the injury for the benefit of the
    insurer, without reservation by the plaintiff of a right to bring
    an action in his individual capacity for the injury, constitutes a
    disposition of the claim before commencement of the action
    which will support a motion for accelerated judgment for the
    defendant even though the agreement provides for possible
    participation by the plaintiff in a recovery from the defendant.

DISSENT BY D. E. HOLBROOK, P. J.

2. INSURANCE—FIDUCIARY AGREEMENTS—PUBLIC POLICY—CONTROL BY
    INSURER—COURTS—SUA SPONTE RECOGNITION.
    *An agreement which purports to make an insured a fiduciary for
    the insurer while at the same time allowing the insurer to
    control the time, forum, and amount prayed for in a cause of
    action for injury to the insured is patently against public
    policy, and therefore invalid, and the Court of Appeals has the
    authority to recognize such an issue* sua sponte.

Appeal from Bay, Leon R. Dardas, J. Submitted
January 6, 1976, at Grand Rapids. (Docket No.
24679.) Decided April 27, 1976. Leave to appeal
applied for.

Complaint by Sandy J. Underwood and Hazel E.
Underwood against Timothy Neal Rechsteiner for
damages resulting from an automobile collision.

REFERENCES FOR POINTS IN HEADNOTES
[1] 47 Am Jur 2d, Judgments §§ 1080–1213.
[2] 44 Am Jur 2d, Insurance § 1530.

Accelerated judgment for defendant. Plaintiffs appeal. Affirmed.

*Carras & Carras,* for plaintiffs.

*T. George Sternberg,* for defendant.

Before: D. E. HOLBROOK, P. J., and R. M. MAHER and D. F. WALSH, JJ.

R. M. MAHER, J. Plaintiffs appeal from an order granting defendant's motion for accelerated judgment, GCR 1963, 116. We affirm.

Plaintiffs' complaint, filed May 13, 1975, in circuit court, alleges personal injuries caused by defendant's negligence in an accident on May 19, 1972, involving their automobile and an automobile driven by defendant. Also alleged was $2,000 damage to plaintiffs' automobile.

On April 11, 1975, plaintiffs, after receiving $4,149.13 from Allstate Insurance under their uninsured motorist coverage, entered into a "trust agreement". They agreed to hold as trustees for the benefit of Allstate "all rights, claims and causes of action" they might have "because of bodily injury, sickness, or disease or death" arising out of the May 19, 1972, accident. The agreement goes on to provide that:

"The Trustee agrees to take, through any representative designated by the Beneficiary, such action as may be necessary or appropriate to recover the damages suffered by the Trustee from any person or persons, organization, association or corporation other than the Beneficiary who may be legally liable therefor, such action to be taken in the name of the Trustee, the Beneficiary to pay all costs and expense in connection therewith. It is further agreed that any monies recovered by the Trustee as the result of judgment, settle-

ment, or otherwise will be held in trust and paid to the Beneficiary, provided, however any sum recovered in excess of the total amount paid by the Beneficiary to the Trustee under the terms of the above-mentioned policy, shall be retained by the Trustee for his own use and benefit."

On May 1, 1975, an action against defendant was started in district court by plaintiffs as trustees for the use and benefit of Allstate. Recovery of $4,149.13 was sought.

Defendant filed his motion for accelerated judgment in the circuit court action. The order granting the motion gave GCR 1963, 116.1(2)(4)(5) as its basis. That portion of plaintiffs' complaint seeking recovery for personal injuries was properly dismissed under GCR 1963, 116.1(5): "the claim is barred because of * * * assignment or other disposition of the claim before commencement of the action." The remainder of plaintiffs' suit, for property damage to their automobile, fails to meet, when standing alone, the circuit court's jurisdictional requirements, MCLA 600.8301; MSA 27A.8301, and therefore comes under GCR 1963, 116.1(2).

Plaintiffs point out that they brought the circuit court action in their individual capacities, while in the district court action they are acting as trustees. This answers a motion for accelerated judgment in the circuit court action under GCR 1963, 116.1(4): "another action is pending between the same parties involving the same claim."

In view of the trust agreement, however, any action against defendant for personal injuries to plaintiffs arising out of the May 19, 1972, accident would have to be brought by plaintiffs as trustees. The agreement plainly states that plaintiffs will hold for Allstate's benefit "all rights, claims and

causes of action". Though the agreement provides for retention by plaintiff of any sum recovered in excess of the amount Allstate had previously paid, this does not lead to the conclusion that plaintiffs could maintain an action in their individual capacities.

We think defendant could properly take the "trust agreement" as plaintiffs' agreement to hold all their rights, claims and causes of action against him as trustees for the benefit of Allstate. Even though the second paragraph provides for the *possible* participation by plaintiffs in a recovery against defendant, it is the intent of this paragraph that this recovery would be had in an action commenced by plaintiffs as trustees. The agreement does not indicate any reservation by plaintiffs of the right to bring an action in their individual capacity. The agreement plaintiffs entered into was a "disposition of the claim before commencement of the action" that supported the grant of accelerated judgment against them.

We will not speculate on why plaintiffs assented to this broad trust agreement, or what sort of advice was given them.

Affirmed, costs to defendant.

D. F. WALSH, J., concurred.

D. E. HOLBROOK, P. J. *(dissenting).* This writer is unable to agree with the opinion filed by the majority in this case, and therefore feels constrained to respectfully dissent. It is obvious that the so-called "trust agreement" is essential to defendant's prevailing in this case and also is essential to the majority's resolution on this appeal. It is the opinion of this writer that the subject "trust agreement" *is invalid as against public policy;* it is therefore not possible to concur

in an opinion which gives effect to such an agreement.

There can be little doubt that the insurance business is affected with a public interest. *Attorney General, ex rel Commissioner of Insurance v Michigan Surety Co,* 364 Mich 299; 110 NW2d 677 (1961), *Dearborn Nat'l Insurance Co v Commissioner of Insurance,* 329 Mich 107; 44 NW2d 892 (1950). The public policy of this state could have been considered in the court below, and should have compelled that court to reach a different result. In fairness to the trial judge it is noted that this issue was not raised before him. This Court has the authority to raise such an issue *sua sponte. People, ex rel Attorney General v Koscot Interplanetary, Inc,* 37 Mich App 447, 478; 195 NW2d 43, 58 (1972).

In *Koscot, supra,* 478–480; 195 NW2d 43, 58–59, this Court quoted as authority the following statement from *Sipes v McGhee,* 316 Mich 614, 623–624; 25 NW2d 638, 642 (1947):

" 'What is the meaning of "public policy"? A correct definition, at once concise and comprehensive, of the words "public policy", has not yet been formulated by our courts. Indeed, the term is as difficult to define with accuracy as the word "fraud" or the term "public welfare". In substance, it may be said to be the community common sense and common conscience, extended and applied throughout the State to matters of public morals, public health, public safety, public welfare, and the like. It is that general and well-settled public opinion relating to man's plain, palpable duty to his fellow men, having due regard to all the circumstances of each particular relation and situation.

" 'Sometimes such public policy is declared by Constitution; sometimes by statute; sometimes by judicial decision. More often, however, it abides only in the customs and conventions of the people,—in their clear

consciousness and conviction of what is naturally and inherently just and right between man and man. It regards the primary principles of equity and justice and is sometimes expressed under the title of social and industrial justice, as it is conceived by our body politic. When a course of conduct is cruel or shocking to the average man's conception of justice, such course of conduct must be held to be obviously contrary to public policy, though such policy has never been so written in the bond, whether it be Constitution, statute or decree of court. It has frequently been said that such public policy is a composite of constitutional provisions, statutes and judicial decisions, and some courts have gone so far as to hold that it is limited to these. The obvious fallacy of such a conclusion is quite apparent from the most superficial examination. When a contract is contrary to some provision of the Constitution, we say it is prohibited by the Constitution, not by public policy. When a contract is contrary to statute, we say it is prohibited by a statute, not by a public policy. When a contract is contrary to a settled line of judicial decisions, we say it is prohibited by the law of the land, but we do not say it is contrary to public policy. Public policy is the cornerstone—the foundation—of all constitutions, statutes, and judicial decisions; and its latitude and longitude, its height and its depth, greater than any or all of them.' "

It would seem that the subject agreement which would purport to put an insured in a position of a fiduciary for the insurer, and at the same time allow the insurer to control the time, forum, and amount prayed for in a cause of action based upon an injury to the insured is patently against the principles of public policy. It certainly does not seem inherently just and right. Having regard to the circumstances and the relation between the parties, it would seem that the insurance company has a duty to render fairer treatment to its insured.

Since the majority opinion, although possibly

adopted reluctantly, has the effect of enforcing an agreement that is against public policy, and that is unjust and unfair in its application as is evidenced by the facts of this case, this writer respectfully dissents. The trust agreement should be declared invalid, thus precluding any reliance upon it by defendant, and the case be remanded for proceedings consistent with this opinion.

This writer so votes.